IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND, NORTHERN DIVISION

| | |
|---|---|
| JAMES RESPESS, Individually and as Personal Representative of the Estate of PATRICIA RESPESS,<br><br>　　　　　　　Plaintiffs,<br><br>　　v.<br><br>TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA *et al.*,<br><br>　　　　　　　Defendants. | Case No.  1:10-cv-02937-CCB |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION TO DISMISS THE COMPLAINT WITH PREJUDICE**

In accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 105, Defendants Travelers Casualty & Surety Company of America ("Travelers Casualty") and the Travelers Indemnity Company ("Travelers Indemnity") (together, "Defendants") submit this memorandum in support of their motion to dismiss all counts of the Complaint for failure to state a claim.

**INTRODUCTION**

This case involves the administration of workers' compensation benefits.  In 1987, Patricia Respess was assaulted at work and she pursued a workers' compensation claim.  For many years, Defendants paid for the treatment of her psychiatric conditions resulting from the assault.  In January 2008, Mrs. Respess experienced another psychiatric episode and was hospitalized for almost four months.  On April 25, 2008, doctors at Sheppard Pratt discharged

Mrs. Respess who returned home with Plaintiff James Respess.  A few days later, Defendants denied requests to pay for her 24-hour supervised care.  Mrs. Respess did not seek further medical attention and remained at home.  Five days later, Mrs. Respess committed suicide.

The decedent is survived by her husband, Plaintiff James Respess, who alleges that Defendants' failure to approve payment for medical treatment was extreme and outrageous, done with malice, and resulted in severe emotional distress causing Mrs. Respess to commit suicide.  The Complaint, however, lacks any facts to support these conclusory statements.  Stripped of its labels, this action merely challenges Defendants' claims handling.  The Complaint should be dismissed in its entirety for several reasons:

- The Complaint lacks any factual allegations of "extreme and outrageous" conduct necessary to state a claim for intentional infliction of emotional distress.

- Defendants' decision to deny authorization of payment was not for the purpose of causing the decedent's suicide.

- Maryland law does not recognize a cause of action for grossly negligent infliction of emotional distress.

- Defendants do not owe any tort duties to Plaintiff or decedent.

- Defendants' denial of authorization to pay for medical benefits was not the proximate cause of decedent's death.

- The denial of workers' compensation benefits is governed exclusively by the Workers' Compensation Act.

- Defendants' liability is limited by the Workers' Compensation Act.

# BACKGROUND[1]

The decedent, Patricia Respess, was married to Plaintiff James Respess. In 1987, while working for National Medical Care, Inc., Mrs. Respess was physically and sexually assaulted at work. Compl. ¶ 7. As a result of the assault, Mrs. Respess experienced numerous psychiatric conditions and she pursued a workers' compensation claim. *Id*. at ¶¶ 7, 8.

Defendants Travelers Casualty and Travelers Indemnity are insurance companies who insured National Medical Care, Inc. and provided workers' compensation benefits to Mrs. Respess over many years.[2] *Id*. at ¶¶ 8, 10. Defendants are not medical professionals and do not provide medical services.

Beginning in or around 1999/2000, Mrs. Respess received psychiatric treatment which continued until May 2008. *Id*. at ¶¶ 9, 10. Defendants approved and paid for such treatment in connection with her workers' compensation claim. *Id*. at ¶ 10. During this eight year period, Mrs. Respess' psychiatric conditions were in and out of remission. *Id*. at ¶ 11.

On or about January 2, 2008, Mrs. Respess experienced another psychiatric episode and was admitted to the Mental Health Facility at Peninsula Regional Medical Center for depression, anxiety and flashbacks. *Id*. ¶ 12. She was treated and then transferred to an in-patient Trauma Disorders Program at Sheppard Pratt hospital. *Id*. She remained at Sheppard Pratt and continued to receive treatment for over three months from January 23, 2008, through April 25, 2008. *Id*. at

---

[1] Defendants repeat the facts as alleged by Plaintiffs treating them as true – as required – for purposes of this motion to dismiss only.
[2] Travelers Casualty and Travelers Indemnity are separate corporate entities although Plaintiff improperly lumps them together in the Complaint as "Defendants." *See, e.g.*, Compl. ¶ 2.

¶¶ 13, 14.  In accordance with her workers' compensation claim, Defendants paid for this care. *Id*. at ¶ 10.

Throughout her hospitalization at Sheppard Pratt, Mrs. Respess expressed thoughts of suicide to her physicians and counselors.  *Id*. at ¶¶ 16, 17.  She also was treated for anxiety, depression and flashbacks.  *Id*. at ¶ 15.  Four days before being discharged, Mrs. Respess told her doctors and counselors that she did not want to go home because of concerns about her outpatient medical care.  *Id*. at ¶ 18.  Plaintiff also raised concerns to counselors at Sheppard Pratt about Mrs. Respess returning home, and he requested that she be placed in a step-down facility instead.  *Id*. at ¶ 20.  Notwithstanding these concerns, on April 25, 2008, Mrs. Respess was discharged from Sheppard Pratt and she returned home with Plaintiff.  *Id*. at ¶¶ 19, 20.

On April 30, 2008, a home health care nurse visited and examined Mrs. Respess.  *Id*. at ¶ 21.  The nurse determined that Mrs. Respess was anxious, depressed and had thoughts of suicide—which are the same conditions Mrs. Respess' doctors and counselors observed while she was at Sheppard Pratt just days earlier. *Compare id*. at ¶ 25, *with id*. at ¶¶ 15, 16.  The nurse opined that Mrs. Respess required 24-hour supervision because she continued to express ideas of suicide.  *Id*. at ¶ 26.  The nurse contacted Defendants seeking authorization to pay for 24-hour supervised care.  *Id*. at ¶ 27.  No authorization was given.  *Id*.

Also on April 30, 2008, the nurse called Dr. Book, a psychiatrist who had previously treated Mrs. Respess, and asked him to seek Defendants' authorization to pay for 24-hour supervised care.  *Id* at ¶ 28.  Based solely upon that conversation (and without conducting any exam of Mrs. Respess), Dr. Book called Defendants asking for authorization.  *Id*.  No authorization was given.  *Id*. at ¶ 29.  Plaintiff alleges that Defendants refused the requests

because they "did not believe that Mrs. Respess suffered from PTSD as diagnosed by her psychiatrist." *Id*. at ¶ 32. Plaintiff also wrote a letter to Sheppard Pratt requesting that his wife be placed in a residential setting with 24-hour care. *Id*. at ¶ 31. Mrs. Respess was not taken to the hospital or admitted for treatment; she remained at home and her condition reportedly declined. *Id*. at ¶ 30.

On May 5, 2008, Mrs. Respess took an overdose of blood pressure medication. *Id*. at ¶ 33. She left a suicide note mentioning the Defendants. *Id.* at ¶ 34. Mrs. Respess went into a coma and died on May 9, 2008. *Id*. at ¶ 35.

Plaintiff filed the instant lawsuit in his individual capacity and on behalf of the decedent. The Complaint alleges, *inter alia*, intentional infliction of emotional distress (Count 1), gross negligence (Count 2), and wrongful death (Count 3) arising from Defendants' failure to approve the payment of 24-hour care for the decedent. In an attempt to avoid the Workers' Compensation Act, Plaintiff contends that the refusal was extreme, outrageous, malicious, willful and intentional and seeks to recover compensatory and punitive damages for emotional distress allegedly suffered both by him and the decedent.

### STANDARD OF REVIEW FOR MOTION TO DISMISS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The court is not bound by plaintiff's legal conclusions couched as factual allegations. *Papasan v. Allian*, 478 U.S. 265, 286, 106 S. Ct. 2932 (1985); *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001). The alleged grounds for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Proctor v. Metropolitan*

*Money Store Corp.*, 579 F. Supp. 2d 724, 730 (D. Md. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007) (internal quotations omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, __ U.S. ___, ___, 129 S. Ct. 1937, 1949-50 (2009). Furthermore, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'show[n]' – that the pleader is entitled to relief." *Id*. at 1950 (quoting Fed. R. Civ. P. 8(a)(2) (alteration in original)). Allegations that are "no more than conclusions [] are not entitled to the assumption of truth." *Id*. Moreover, allegations that are merely consistent with unlawful conduct, without more, will not survive a motion to dismiss, especially where the same conduct is more likely explained by lawful behavior." *Id*. (citing *Twombly*, 550 U.S. at 567).

## ARGUMENT

**I.      Plaintiff Has Failed to State a Claim for Intentional Infliction of Emotional Distress.**

Under Maryland law, "the tort of intentional infliction of emotional distress is *rarely viable*." *Farasat v. Paulikas*, 32 F. Supp. 2d 244, 247 (D. Md. 1997) (emphasis added). *See also Waldrop v. Science Applications Int'l Corp.*, AW 10-cv-0328, 2010 WL 2773571 (D. Md. July 13, 2010) (granting motion to dismiss claim for intentional infliction of emotional distress); *Asafo-Adjei v. First Savings Mortgage Corp.*, RWT 09-cv-2184, 2010 WL 730365 (D. Md. Feb. 25, 2010) (same); *Tavakoli-Nouri v. State*, 139 Md. App. 716, 779 A.2d 992 (2001) (affirming dismissal of intentional infliction of emotional distress cause of action for failure to state a claim); *Borchers v. Hrychuk*, 126 Md. App. 10, 727 A.2d 388 (1999) (affirming dismissal of intentional infliction of emotional distress cause of action for failure to state a claim); *Hamilton*

*v. Ford Motor Credit Co.*, 66 Md. App. 46, 61, 502 A.2d 1057 (1986) (granting j.n.o.v. and dismissing intentional infliction of emotional distress claim). To state a claim, the following elements must be alleged and proved with specificity:

> (1) The conduct must be intentional or reckless;
> (2) The conduct must be extreme and outrageous;
> (3) There must be a casual connection between the wrongful conduct and the emotional distress; and
> (4) The emotional distress must be severe.

*Harris v. Jones*, 281 Md. 560, 566, 380 A.2d 611 (1977). "[E]ach of these four requirements must be satisfied completely before a cause of action will lie," and that determination shall be decided initially by the court. *Hamilton*, 66 Md. App. at 58, 502 A.2d at 1063.

### A. Defendants' Alleged Conduct Was Not Extreme and Outrageous.

"Outrageousness" is the crux of intentional infliction of emotional distress. A defendant's conduct is "outrageous" if it is "so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Batson v. Shiflett*, 325 Md. 684, 734, 602 A.2d 1191, 1216 (1992). The alleged conduct "must completely violate human dignity . . . and strike to the very core of one's being, threatening to shatter the frame upon which one's emotional fabric is hung." *Hamilton*, 66 Md. App. at 59-60, 502 A.2d 1057. As recognized by the Maryland Court of Appeals, claims for intentional infliction of emotional distress only have been upheld three times where the conduct was utterly intolerable – a psychologist who had sex with plaintiff's wife while providing marriage counseling therapy; a doctor who had sex with his nurse but did not disclose that he had herpes; and an insurer who demanded that a claimant subject herself to an examination for the sole purpose of causing her to abandon the claim or commit suicide. *Baston*, 325 Md. at 734,

602 A.2d at 1216 (discussing cases).  Dismissal is appropriate where the specific factual allegations do not support extreme and outrageous conduct.  *See, e.g., Farast*, 32 F. Supp. 2d at 248 (granting motion to dismiss claim for failure to sufficiently allege extreme and outrageous conduct); *Dickson v. Selected Risks Ins. Co.*, 666 F. Supp. 80, 81 (D. Md. 1987) (granting insurance company's motion to dismiss because the alleged refusal to provide coverage was not extreme and outrageous and finding that the claim was "frivolous."); *Borchers*, 126 Md. App. at 20, 727 A.2d at 393 (affirming dismissal for failure to state a claim where pastor seduced a clergy member into having sex using her emotional vulnerability and other confidential information because such conduct was not extreme and outrageous).

Defendants' handling of Mrs. Respess' workers compensation claim was not extreme and outrageous.  It is undisputed that Defendants' refusal to pay for 24-hour care was not deliberately intended to cause decedent's suicide.  Rather, Plaintiff alleges that Defendants refused authorization because they did not agree with the diagnosis.  Compl. ¶ 32.  That allegation is patently inconsistent with extreme and outrageous conduct.  Indeed, other allegations in the Complaint support a reasonable basis for Defendants' decision not to approve payment for the 24-hour care.  For example:

- Decedent's psychiatric conditions were in and out of remission for over eight years, with repetitive episodes of anxiety, depression and thoughts of suicide.

- There was nothing extraordinary about Mrs. Respess expressing thoughts of suicide.  She previously had reported thoughts of suicide but never acted on them.

- There was nothing extraordinary about Mrs. Respess living at home.  She had done so for many years.  Indeed, even the medical professionals at Sheppard Pratt determined that she could live at home over her and Plaintiff's objections.

- Decedent was treated at the Mental Health Facility at Peninsula Regional Medical Center and the Trauma Disorders Program at Sheppard Pratt from January 2008, through April 2008. During that time, she reported thoughts of suicide and expressed concern about being discharged. Notwithstanding these reports and concerns, the treating medical professionals determined that Mrs. Respess was okay to return home with Plaintiff. If thoughts of suicide urgently required 24-hour supervision, Mrs. Respess would not have been discharged.

- If Mrs. Respess was actively suicidal and that fact was made known to her psychiatrist, then he could have had her admitted to an emergency room or inpatient facility. He did not do so.

- The health care nurse observed similar conditions to those observed by the medical professionals at Sheppard Pratt. The only difference is that the medical professionals at Sheppard Pratt determined (after three months of treatment) that Mrs. Respess did not need 24-hour supervised care and could be at home, while the heath care nurse reached a different conclusion.

In light of the decedent's medical history and the conflicting medical opinions regarding treatment, Defendants' decision to deny payment for 24-hour care was not extreme and outrageous. Plainly, Defendants had paid for decedent's medical treatment for many years in connection with her workers' compensation claim dating back to 1987, and they continued to pay for required treatment under applicable workers' compensation law. In this instance, there was a conflict among the medical professionals over the appropriate treatment for Mrs. Respess. The decision to deny benefits under these circumstances does not "completely violate human dignity," or "go beyond all possible bounds of decency" and is neither "atrocious" nor "utterly intolerable."[3] Accordingly, Plaintiff's failure to allege facts showing "extreme and outrageous"

---

[3] The refusal to pay for treatment did not prevent Mrs. Respess from seeking and obtaining supervised care—there are options available if a person is actively suicidal which do not involve considerations of who or how to pay for the treatment.

conduct mandates dismissal of the intentional infliction of emotional distress claim with prejudice.[4]

### B. Defendants' Refusal to Approve Workers' Compensation Benefits Does Not Give Rise to an Intentional Tort.

*Gallagher v. Bituminous Fire and Marine Ins. Co.*, 303 Md. 201, 492 A.2d 1280 (1985), involved a similar attempt to sue for intentional infliction of emotional distress arising from an insurer's handling of workers' compensation benefits.  The claimants alleged that the insurer's withholding of payment was willful, malicious and done to discourage them from securing benefits under the Workers' Compensation Act.  *Id*. at 206, 492 A.2d at 1282.  The Complaint further alleged that the insurer's conduct was "gross negligence of the highest magnitude," "offensive to public policy" and carried out with "actual and implied malice," causing humiliation, emotional distress and problems with claimants' credit.  *Id*.  The Court of Appeals rejected claimants' allegations finding that an insurer's exercise of statutory duties under the Workers' Compensation Act does not give rise to extreme and outrageous conduct.  *Id*. at 212, 492 A.2d 1285.  Accordingly, the court affirmed the dismissal of a claim for intentional infliction

---

[4] Plaintiff also does not allege facts to support the other elements of intentional infliction of emotional distress.  Besides using the labels "intentional or reckless" the Complaint does not allege any facts of such conduct.  With respect to Plaintiff's individual claims, the Complaint again only contains conclusory allegations that Plaintiff suffered "severe emotional distress."  These pleading failures are additional, independent reasons for dismissing the claim.  *Waldrop*, 2010 WL 2773571, at *5 (granting motion to dismiss where plaintiff failed to plead with particularity what emotional distress she suffered, how long it lasted, how severe it was or whether she sought medical treatment); *Asafo-Adjei*, 2010 WL 730365, at * 5 (dismissing claim and finding the plaintiff failed to describe with particularity the emotional distress allegedly suffered); *Tavakoli-Nouri*, 139 Md. App. at 729, 779 A.2d at 1000 (affirming dismissal because no facts showing severely disabling emotional response); *Manikhi*, 360 Md. at 370, 758 A.2d at 115 (affirming dismissal because Complaint failed to state with reasonable certainty the nature, intensity or duration of the alleged emotional injury).

of emotion distress. *Id*. *See also Dickson*, 666 F. Supp. at 81 (holding that the refusal to provide insurance benefits was not extreme and outrageous).

Faced with similar allegations, the Colorado Court of Appeals recently held that deliberately refusing to provide workers' compensation benefits—even if in bad faith—does not give rise to an intentional tort or make an insurer liable for a claimant's suicide. *Moore v. Western Forge Corp.*, 192 P.3d 427 (Colo. Ct. App. 2008). There, the claimant committed suicide after receiving notice contesting his workers' compensation claim. Plaintiff alleged that the claims administrator's bad faith denial of benefits caused the suicide. The court disagreed finding no legal authority for the proposition that a breach of an insurer's duty of good faith and fair dealing "could lead to liability for the suicide of an insured." *Id*. at 433. The court further concluded that "a claim for outrageous conduct must be based upon action that is more egregious than either the conduct underlying a bad faith breach of contract claim or a willful and wanton breach of contract claim." *Id*. Moreover, unless the insurer deliberately intends to cause emotional distress or physical injury, the court found that the intentional tort approach should not apply to the handling of a workers' compensation claim. *Id*. at 433-34 (the intentional tort approach "is applicable only where the actor intended to cause injury, and the injury is a substantial factor in bringing about the suicide. . . if the suicide can be shown to have been caused by the type of injury that the defendants intended to inflict . . .").

Like the holdings in *Gallagher* and *Moore*, here too there is no legal or factual basis for intentional tort liability for the Defendants' refusal to approve workers' compensation benefits.

## II.     Plaintiff's Claim for Gross Negligence Should be Dismissed.

### A.     There Is No Cause of Action for Grossly Negligent Infliction of Emotional Distress.

Plaintiff alleges that Defendants' gross negligence caused "severe and extreme emotional distress." Compl. ¶ 49.  No such cause of action exists under Maryland law.  *See, e.g., Hamilton*, 66 Md. App. at 63, 502 A.2d at 1066 ("We cannot imagine any acts opprobrious enough to justify an award of damages solely for the infliction of emotional distress that would satisfy the definition of reckless conduct encompassed by the concept of intentional infliction of emotional distress.").  Maryland courts have repeatedly rejected attempts to recover for emotional distress damages based upon anything less than extreme and outrageous conduct.  *Abrams v. City of Rockville*, 88 Md. App. 588, 594, 596 A.2d 116, 118  (1991).

### B.     Plaintiff Has Failed to Allege Sufficient Facts to State a Claim for Gross Negligence.

Even assuming *arguendo* that emotional distress allegedly caused by gross negligence gives rise to a viable cause of action (which it does not), Plaintiff still has failed to state a claim.

Gross negligence "implies malice and evil intention." *Floor v. Juvenile Servs. Admin.*, 78 Md. App. 151, 170, 552 A.2d 947, 956 (1989) (quoting *Bannon v. B. & O. R.R. Co.*, 24 Md. 108, 124 (1866)).  Deliberateness lies at the core of gross negligence.  *McCoy v. Hatmaker*, 135 Md. App. 693, 763 A.2d 1233 (2000).   The Maryland Court of Appeals has described gross negligence as:

> An intentional failure to perform *a manifest duty in reckless disregard of the consequences* as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them.  Stated conversely, a wrongdoer is guilty of gross negligence or

> acts wantonly and willfully only when he *inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist.*

*Romanesk v. Rose*, 248 Md. 420, 423, 237 A.2d 12 (1968) (emphasis added). *See also Marriott Corp. v. Chesapeake & Potomac Tel. Co. of Md.*, 124 Md. App. 463, 478, 723 A.2d 454, 461 (1998). Considering this heightened standard, a claim for gross negligence must be pled with particularity—"bald and conclusory allegations will not suffice." *Floor*, 78 Md. App. at 170, 552 A.2d at 956 (affirming dismissal of gross negligence where allegations lacked specificity).

### 1. Defendants Did Not Owe Any Duty in Tort to Plaintiff or Decedent.

The existence of a legal duty is for the court to decide as a matter of law. *Doe v. Pharmacia & Upjohn Co.*, 388 Md. 407, 414, 879 A.2d 1088, 1092 (2005). "At its core, the determination of whether a duty exists represents a policy question of whether the plaintiff is entitled to protection from the defendant." *Id*. The following factors should be considered:

> The forseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Id*. (citations and quotation omitted).

Plaintiff alleges that "Defendants had a duty to employ reasonable measures in the managing the medical and psychiatric treatment of Patricia Respess pursuant to the worker's compensation claim." Compl. ¶ 45. Plaintiff is wrong because no such duty exists.[5]

Defendants are not medical professionals and do not provide medical services. They do not decide a claimant's medical and psychiatric treatment. Defendants are insurers who handle claims and administer benefits. Decedent had a number of medical professionals who provided her care and treatment. Defendants paid for such treatment; they are not responsible for the medical decisions made by decedent's doctors. *Flood v. Merchants Mutual Ins. Co.*, 230 Md. 373, 377, 187 A.2d 320, 322 (1963).

Defendants likewise did not owe any duty to prevent decedent's suicide. As recognized by the Colorado Court of Appeals, "the burden on claims administrators to guard against suicide would be extremely high because they would be required to make judgments about the mental health of insureds. Claims administrators do not have special expertise or professional training with which to make such judgments." *Moore*, 192 P.3d at 435. *See also, e.g., English v. Griffith*, 99 P.3d 90, 94 (Colo. Ct. App. 2004) (rejecting claim that there exists "a duty not to cause the decedent to experience an uncontrollable impulse to commit suicide."); *Chalhoab v. Dixon*, 788 N.E.2d 164, 167 (Ill. App. 6th Dist. 2003) (finding no duty to prevent suicide, in part, because "laypeople cannot be reasonably expected to anticipate the mental health consequences of their acts or omissions."); *Webstad v. Stortini*, 924 P.2d 940 (Wash. App. 1996) ("no duty exists to avoid actions or omissions that lead another person to commit suicide"). Maryland only

---

[5] Plaintiff makes no allegation that Defendants owed him any duty and therefore Plaintiff cannot state a claim for gross negligence.

recognizes two situations where a party may be liable for the suicide of another—and neither situation exists here. *Sindler v. Litman*, 166 Md. App. 90, 111, 887 A.2d 97, 109 (2005).

The only duties owed by Defendants to the decedent are those expressly set forth in the insurance contract with National Medical Care, Inc. and as required by Maryland's Workers' Compensation Act. Any allegations that Defendants failed to meet those duties is remedied exclusively under Workers' Compensation statutory law, not tort law. Accordingly, absent any duty, Plaintiff's claim for gross negligence should be dismissed with prejudice.

### 2.     Defendants' Alleged Conduct Does Not Constitute Gross Negligence.

Even assuming a duty, there are no facts in the Complaint that constitute gross negligence. *Wells v. State*, 100 Md. App. 693, 642 A.2d 879 (1994) illustrates the heightened requirements for gross negligence. There, the plaintiff sued the Department of Social Services and individual employees for failing to prevent the repeated infliction of abuse by his mother and her boyfriend that occurred over many years. That abuse also lead to the death of plaintiff's sister. The court described the complaint as "a saga of physical abuse suffered by [] defenseless children throughout most of their lives, leading ultimately to the torture and death of Myeshia at the age of nine, and a deeply disturbing dereliction on the part of DSS in failing to take effective remedial action when there existed within the Department adequate warning that the children—especially Myeshia—were at risk." *Id*. at 698, 642 A.2d at 881. Nevertheless, the court held that plaintiffs failed to state a claim for gross negligence finding that the allegations do not indicate "malice, evil intention, or wanton, willful, or reckless disregard for human life or the rights of other." *Id* at 705-06, 642 A.2d at 885. The court also refused to accept as true the conclusory

statement that the defendants' acts or omissions "were committed willfully, wantonly, and with reckless disregard of [plaintiff's] rights." *Id*. at 703, 642 A.2d 884.

Similar to the deficient pleading in *Wells*, Plaintiff's Complaint merely consists of conclusory allegations that Defendants conduct was "wanton, extraordinary, outrageous and in utter disregard" for Mrs. Respess' life (Compl. ¶ 48), and is devoid of any facts to support such allegations.[6]

### C. Defendants' Alleged Conduct Did Not Proximately Cause the Decedent's Suicide.

Plaintiff contends that Defendants caused his wife's suicide; however, "suicide is an independent superseding act or, in any event, not proximately caused by the negligent act, which precludes imposing liability on a third party for the suicide of another." *Sindler*, 166 Md. App. at 113, 887 A.2d at 110. *See also Moore*, 192 P.3d at 435-37 (finding that there is no liability for suicide based only on actual causation and that "[b]ecause suicide is usually treated as a voluntary and willful choice" there is no proximate causation). Even assuming that Defendants' refusal to pay for treatment was somehow grossly negligent and assuming the decision caused decedent's emotional distress, her voluntary act of suicide breaks the chain of proximate

---

[6] The Complaint suffers from additional pleading deficiencies that mandate dismissal. For example, Plaintiff improperly lumps together Travelers Indemnity and Travelers Surety, referring to the distinct legal entities as a single unit: "Defendants." Compl. ¶ 2. Plaintiff makes bald, overbroad, and sweeping allegations against "Defendants" that fail to distinguish between what each entity did (or did not do), how each participated in the distinct alleged acts. Critically, Plaintiff's claims are based on the doctrine of respondeat-superior yet fail to identify the principal or agent and it cannot be that both defendants together committed each particular act as alleged repeatedly throughout the Complaint, or that they both caused the alleged emotion distress. *Proctor*, 579 F. Supp. 2d at 744 (granting motion to dismiss and holding that "[t]he Court cannot permit Plaintiffs to go forward on a claim based on factual allegations in which basic questions of who did what are completely unclear."); *Asafo-Adjei*, 2010 WL 730365, at * 5 (dismissing claim and finding the plaintiff failed to identify which defendants caused his emotional distress).

causation necessary to state a claim. Accordingly, Plaintiff cannot establish causation as a matter of law.

### III. The Remedies Set Forth In Maryland's Workers' Compensation Act Are Exclusive.

Plaintiff's dispute that Defendants acted wrongfully in failing to authorize workers' compensation benefits falls under the decision making authority of the Workers' Compensation Commission. According to the Court of Appeals, "[i]f there are issues between insurer and claimant over a termination or nonpayment of benefits, they may be resolved before the Commission. . . . We will not judicially create such a cause of action." *Gallagher,* 303 Md. at 211, 492 A.2d at 1284. The court expressly adopted the reasoning that:

> [A]ppellant's complaint does no more than allege a nonperformance of a statutory duty to provide temporary disability benefits . . . . Such a complaint which does not contain factual allegations identifying the particular acts or circumstances which distinguish the tort of outrageous conduct from an ordinary nonperformance of a statutory duty owed by respondent to appellant is insufficient.

*Id*. (citations omitted). Here too, the Workers' Compensation Act governs an insurer's conduct. For example, Section 9-660(b) provides that an insurer is obligated to pay for medical services and treatment necessary for the claimant's injury. Md. Code, Labor and Employment § 9-660(b). If an insurer fails to properly make payment, the Workers' Compensation Commission may order the insurer to pay a fine and interest. *Id*. at § 9-664.

Because insurers are subject to the Workers' Compensation Act, they are immune from tort liability for alleged failures during the claims handling process. *Donohue v. Maryland Casualty Co.*, 248 F. Supp. 588, 592 (D. Md. 1965) ("Maryland equates liability on the part of a

person to pay workmen's compensation benefits to an immunity of that person from suit for tort liability."); *Flood v. Merchants Mutual Ins. Co.*, 230 Md. 373, 377, 187 A.2d 320, 322 (1963) ("the Workmen's Compensation Act is a substitute for the employer's common law liability for negligence, subject to his common law defenses, and creates an absolute, but limited, liability regardless of fault, such liability upon a conforming employer being exclusive. . . . the insurance carrier [shall] stand in the position of the employer."). For example, in *Flood,* the claimant alleged that the workers' compensation insurer failed to exercise a reasonable degree of intelligence, skill and ability in the selection of the treating physicians and sought to impute the doctor's alleged malpractice. *Id*. at 376, 187 A.2d at 322. Affirming the trial court's dismissal, the Court of Appeals concluded that the insurer was immune from tort liability under the Workers' Compensation Act. *Id*. *See also Gallagher*, 303 Md. at 210, 492 A.2d at 1283-84 ("[T]he intentional delay of workers' compensation payments does not give rise to an independent, intentional tort action against the employer or the insurer where a penalty for such delay is provided by the Act."). Furthermore, to the extent that the refusal of benefits impacted Mrs. Respess' psychiatric condition, that condition was the subject of an existing workers' compensation claim. Accordingly, even assuming that Defendants somehow erred in refusing to pay for treatment, the Workers' Compensation Commission has exclusive jurisdiction over such conduct, Defendants are immune from any tort liability, the Workers' Compensation Act provides an exclusive remedy, and this Court should not judicially create a new cause of action.

## **CONCLUSION**

For the reasons stated, Defendants Travelers Casualty & Surety Company of America and the Travelers Indemnity Company of America request this Court to dismiss the Complaint with prejudice.

Dated:  November 1, 2010

/s/
Neil J. Dilloff (Bar No. 00114)
Michael P. O'Day (Bar No. 27075)
DLA Piper LLP (US)
6225 Smith Avenue
Baltimore, Maryland  21209
Telephone: (410) 580-3000
Facsimile: (410) 580-3001
neil.dilloff@dlapiper.com
michael.oday@dlapiper.com

*Attorneys for Defendants Travelers Casualty & Surety Company of America and the Travelers Indemnity Company of America*